IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JO ANN HOFFMANN                                                    PLAINTIFF

        v.                        Civil No. 09-5052

KEITH FERGUSON, Sheriff,
Benton County, Arkansas;
CAPTAIN HUNTER PETRAY,
Benton County Detention Center;
and STEVE BELL, Little Flock Police
Department                                                        DEFENDANTS


## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

        The Plaintiff, Jo Ann Hoffmann, filed this civil rights action pursuant to 42 U.S.C. §

1983.  She proceeds *pro se* and *in forma pauperis*.

        Plaintiff contends her constitutional rights were violated in the following ways:  (1) she

was unlawfully arrested by Little Flock Police Officer Steve Bell on March 12, 2008; (2) Officer

Bell used excessive force against her by handcuffing her too tightly; (3) she was arrested without

being read her Miranda[1] warnings;  (3) she was unlawfully incarcerated at the Benton County

Detention Center; (4) she was held under unconstitutional conditions of confinement; and (5) she

was physically and verbally abused in the detention center.

        Separate Defendants Sheriff Keith Ferguson and Captain Hunter Petray filed a summary

judgment motion (Doc. 22).  Separate Defendant Steve Bell also filed a motion for summary

judgment (Doc. 27).  To assist the Plaintiff in responding to the motions, a questionnaire was

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

-1-

prepared (Doc. 33).  Plaintiff filed a timely response (Docs. 34-37) to the motions.  The motions are now ready for decision.

## **Background**

On March 12, 2008, Sergeant Steve Bell and Officer Matt Kyle of the Little Flock Police Department were called to the Children's Advocacy Center (CAC) because of a verbal disturbance.  (Doc. 29 Exs. A & B).  Bell was advised there was an individual on the premises refusing to leave.  Id.  While en route to the CAC, Bell was advised that the individual refusing to leave had mental problems.  Id.

Once at the CAC, Bell was met by Mike Armstrong, Beverly Engle, and Jo Ann Hoffmann at the entrance door.  (Doc. 29 Exs. A & B); (Doc. 34 pg. 2 ¶ 4).  Armstrong told Bell that he had asked Hoffmann to leave the property several times but she was refusing.  (Doc. 34 pgs. 2-3 ¶ 5(A)).  Wendy Shumate, Engle, and Armstrong had all told Hoffmann to leave the CAC.  (Doc. 29 Exs. C & D).

Bell asked Hoffmann what her business was with the CAC.   (Doc. 34 pg. 3 ¶ 6).  Hoffmann reported that she had come to make an appointment with child maltreatment investigator Belinda Reynolds.  Id.

Hoffmann had been told by Shumate, Armstrong, and then again by Bell, that Reynolds was not  at the property and would not be returning. (Doc. 29 Exs. A-C).  According to Hoffmann, she agreed to speak with someone else. (Doc. 34 pg. 4 ¶¶ 7-8).  Hoffmann told Bell she was a representative of the Court and could not be legally removed from the property.  Id.

-2-

at ¶ 9.  Hoffmann asserts she had taken Mike VanVliet's[2] case.  Id.  She asserts that his case had been dismissed and she was advised by the court clerk to write the judge since VanVliet was illiterate.  Id.

Hoffmann had driven to the CAC and her car was in the parking lot.  (Doc. 29 Exs. A & B).  Hoffmann indicates Lester Webb, a licensed driver, and Mike Van Vliet were in the car.  (Doc. 34 pg. 5 ¶ 10).  Hoffmann was given the option of leaving right away in her car or of being arrested.  (Doc. 29 Exs. A & B).  However, Hoffmann asserts another factor had to be "considered--as a member of the court, I was immune."  (Doc. 34  pg. 5 ¶ 11).  Hoffmann again refused to leave and said she was on the property legally.  (Doc. 34  pg. 5 ¶ 12.  Bell told Hoffmann three more times that she had to leave as she was asked to do so by employees of the CAC.  (Doc. 29 Exs. A & B).

Hoffmann was handcuffed and placed in the right rear seat of Bell's patrol car.  (Doc. 29 Exs. A & B).  Officer Kyle was advised by the CAC staff that both Webb and VanVliet were sex offenders.  (Doc. 29 Ex. B pg. 3).  Kyle approached Hoffmann's car and told the passengers that they were banned from entering the property and they should leave immediately.  Id.  They complied.  Id.  Hoffman's car was towed from the property of the CAC.  (Doc. 29 Ex. D pg. 2).  By affidavit, Webb states that he is a licensed driver and has never "been a sex offender."  (Doc. 34 pgs. 156-57).  He indicates he could have driven Hoffmann's car off the CAC property but instead was made to leave the property by Kyle.  Id.

---

[2]A civil rights case was filed by Michael Van Vliet against Nurse Andrea Garrett and Dr. John Huskins of the Benton County Detention Center on April 6, 2007.  *VanVliet v. Garrett, et al.,* Civil No. 08-5061.  The case was dismissed on February 21, 2008.  A motion to reconsider was filed on March 11, 2008.  (Doc. 20).  The motion indicates it was filed by VanVliet, through his friend, Hoffmann.  Id.  An appeal was filed to the Court of Appeals for the Eighth Circuit and the mandate dismissing the appeal was filed on January 15, 2010.

Hoffmann maintains she was "forced into the car by Bell who failed to place . . . a seat belt around me." (Doc. 34 pg. 6 ¶ 14(A)). With respect to the handcuffing, she asserts her arms were pinned back and then she was handcuffed. (Doc. 34 pg. 6 ¶ 14(B)). She maintains the cuffs made imprints on her wrist and, had she moved, her arms would have broken. Id. She indicates she could not lean back. Id. She states she was treated as a mental case. Id. The marks made by the cuffs were gone when she was seen at the emergency room on March 14, 2008. Id. at pg. 7 ¶ 14(C).

Hoffmann was told she was being arrested for trespassing. (Doc. 29 Exs. A & B). Hoffmann cites a series of repealed statutes having to do with the abuse of adults, Ark. Code Ann. §§ 5-28-201 to 221, and asserts she was physically and emotionally abused by Bell. (Doc. 34 pg. 8 ¶ 15).

When arrested, Hoffmann refused to give Bell her date of birth, social security number, address, or even confirm her name. (Doc. 29 Exs. A & B). Hoffmann maintains all this information was "already on file in the Benton County 19th Circuit Court & the Benton County Jail." (Doc. 34 pg.8 ¶ 16). Hoffmann was charged with criminal trespass and obstruction of governmental operations. (Doc. 29 Exs. A & B). Bell submitted an affidavit of probable cause to obtain bond to the court. (Doc. 29 Ex. A). Hoffmann indicates the charges were eventually dismissed upon motion of the prosecuting attorney on April 15, 2010. (Doc. 34 pg. 9 ¶¶ 19-20 & 52).

Hoffmann was booked into the Benton County Detention Center on March 12, 2008, on charges of criminal trespass and obstructing governmental operations. (Doc. 24 Ex. 1 pgs. 1-2).

-4-

Defendants state that Hoffmann refused to sign an inmate telephone system notice, the Benton County Detainee Rules, the personal property inventory, the property issue sheet, and the inmate medical insurance information sheet.  Id. at pgs. 3, 5, 7-9.  Hoffmann indicates she did not sign any documents because she had not been given her Miranda warnings and had no attorney.  (Doc. 36 pg. 123).

Hoffmann submitted one document on March 13th on which she circled grievance, request, and medical.  (Doc. 24 Ex. 1 pg. 17).  She stated that at least eight of the detainee rights had been violated.  Id.  She asserted that she had a medical condition that caused her to have restrictions on her diet.  Id.  Captain Petray responded on March 14th.  (Doc. 24 Ex. 1 pg. 17).  He said he did not understand what Hoffmann was trying to say.  Id.

 Hoffmann also submitted a medical request on March 13th.  (Doc. 24 Ex. 1 at pg. 18.  When the nurse reviewed the request on March 14th, Hoffmann had already been released.  Id.  According to Hoffmann, the "rules are that every prisoner had to undergo [an] exam [within] 24 hours."  (Doc. 34 pgs. 14-15 ¶ 29).

Hoffmann was released on her own recognizance on March 14th and instructed to go to the Little Flock Municipal Court on April 10, 2008.  (Doc. 34 pg. 15 ¶ 30).  Hoffmann never saw or spoke to Captain Hunter Petray.  Id. at ¶¶ 31-32.  Hoffmann asserts the philosophy of the detention center personnel was that they are the only ones who talk to the "top escheln."  Id. at ¶ 31.  With respect to Sheriff Ferguson, she asserts that following her release, she put in a Freedom of Information Request and Sheriff Ferguson came into the front office and "threatened

-5-

AO72A
(Rev. 8/82)

to throw [her] back in" when she asked for copies of her papers including the probable cause affidavit.  Id. at ¶ 33; see also (Doc. 36 pg. 54).

Hoffmann maintains she was denied routine medical care.  (Doc. 34 pg. 17 ¶ 36).  She indicates she has sleep apnea with a "record of venous blood gas analysis indicating severe hypoxia."  Id.  She indicates she suffered instant vertigo due to the lice shampoo she was forced to use.  (Doc. 34 pg. 18 ¶ 37).  She also states she was held without her cane.  Id.

With respect to her allegation that she was physically abused when booked in, Hoffmann was asked who physically abused her, how she was physically abused, and whether she suffered any injuries as a result.  (Doc. 34 pg. 19 ¶ 38).  In response, she answered Mr. Bell, Mrs. Vanatta, and Deputy Bendon.  Id.  Despite being asked to do so, she did not indicate how these individuals physically abused her or whether she suffered any injuries as a result.  Id.  She does at one point assert Vanatta called her names and demeaned her.  (Doc. 36 pg. 58).  She also maintains Bendon used foul language in speaking to her and threatened to put her on a thirty day lock-down if Hoffman pushed the emergency button one more time.  (Doc. 37 pg. 14-15); (Doc. 34 pg 19 ¶ 37);  Finally, she maintains Bendon required her to take a shower with lice treatment shampoo.  (Doc. 37 pg. 15).  Hoffmann maintains this was detrimental to her health because she is "an environmental patient from the Environmental Health Center of Dallas."  Id.

Hoffmann was then asked a series of questions about the conditions of her confinement.  (Doc. 34 pgs. 19-25 ¶¶ 39-48).  She stated, among other things,  the following:  she was not provided with her Miranda warnings (Doc. 36 pg. 60); the facility was not in compliance with federal, state, and county statutes (Doc. 36 pg. 60); the facility was overbooked (Doc. 34 pg.

-6-

132); she had no opportunity to exercise (Doc. 36 pg. 60); she did not receive health care (Doc. 36 pg. 47); there were no clocks (Doc. 37 pg. 16); there were no inmate programs for her to participate in (Doc. 36 pg. 60); Captain Petray responded to her grievance by stating he did not understand what she was talking about (Doc. 36 pg. 45); she was not informed about mailing procedures (Doc. 36 pg. 95); she did not have visitors (Doc. 36 pg. 57); she is allergic to soap and water (Doc. 36 pg. 97); she did not know what temperature the jail was maintained at but she was cold during her incarceration (Doc. 36 pg. 98); she did not know how to use the phone and was not given a "pin number card" (Doc. 36 pg. 126); she went without a meal the afternoon she was booked in (Doc. 36 pg. 135); she was forced to sleep on a bunk with only a thin mat (Doc. 37 pg. 16-17); and she was served cold food (Doc. 37 at pg. 17).

Hoffmann also submitted with her response numerous documents not relevant to this case, among other things, she submitted:  a copy of a letter dated October 22, 1997, from Rickard Hood to Kenny Hancock at the Bank of Bentonville (Doc. 34 pg.29); copies of documents addressed to the State Board of Election Commissioners (Doc. 34 pg. 51); numerous documents from the investigation and criminal conviction of VanVliet see e.g., (Doc. 34 pgs. 80, 92, 95-96, 99-115)(Doc. 35 pg. 7)(Doc. 36 pg. 10-12); documents regarding Mike Armstrong, who is not a party to this case, and when a prosecuting attorney is immune from suit see e.g. (Doc. 34 pgs. 82-87); newspaper articles  and other documents regarding the CAC's tax status see e.g. (Doc. 35 pgs. 2-3); an application to use a fictitious name (Doc. 35 pg. 61); CAC's articles of incorporation (Doc. 35 pgs. 76-79); letters objecting to the conduct of Bob Balfe and to his appointment by the President (Doc. 36 pg. 66-69, 81-83); information about criminal charges

-7-

against Frank J. Wallace (Doc. 37 pgs. 41-44); information about criminal charges against Scottie Weiser (Doc. 37 pgs. 50-51); and information about criminal charges against Amy Tatom (Doc. 37 pgs. 53) .

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

## Separate Defendant Steve Bell's Motion for Summary Judgment

In his motion for summary judgment, Separate Defendant Steve Bell argues he had sufficient probable cause to arrest Hoffmann and did not use excessive force when arresting her.

AO72A
(Rev. 8/82)

Finally he argues that the reading of <u>Miranda</u> warnings is procedural and does not support a cause of action.

### False Arrest

In <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), the Supreme Court stated:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Ibid.*

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers-all of whom may be potential defendants in a § 1983 action-is entirely consistent with "due process of law."

<u>Baker</u>, 443 U.S. at 145-46.

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." <u>Flynn v. Brown</u>, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and citations omitted).  "[D]etermining if probable cause exists is not an exact science," <u>Brodnicki v. City of Omaha</u>, 73 F.3d 1261, 1265 (8th Cir. 1996), however, viewing the facts as a whole at the time of Hoffmann's arrest, I believe a prudent person would have been justified in believing Hoffmann had committed the offenses of criminal trespass in violation of Ark. Code Ann. § 5-39-203(a)[3] and obstruction of governmental operations in violation of Ark. Code Ann. § 5-54-

---

[3] Ark. Code Ann. § 5-39-203(a)(2) provides as follows:  "A person commits criminal trespass if he or she purposely enters or remains unlawfully in or upon . . . [t]he premises of another person."

-9-

102(a)(1)[4].  With respect to the criminal trespass charge, Hoffmann was repeatedly asked to leave the CAC property; she had been told the individual she wanted to see was not on the property and would not be returning; and, she was given the option of leaving the property in her own car or being arrested.  With respect to the crime of obstruction of governmental function, Hoffmann refused to provide Bell with any identifying information and refused to confirm her name was Jo Ann Hoffmann.  There is no evidence of a Fourth Amendment violation.  <u>Sheets v. Butera</u>, 389 F.3d 772, 778 (8th Cir. 2004); <u>see also Anderson v. Larson</u>, 327 F.3d 762, 770 (8th Cir. 2003)(A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest); <u>Kurtz v. City of Shrewsbury</u>, 245 F.3d 753, 758 (8th Cir. 2001)("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest.  Since the record adequately supports the conclusion that the police officers had probable cause to arrest Kurtz for tampering, plaintiffs' allegations of false arrest fail to establish a civil rights violation.").

### *Excessive Force in Handcuffing*

The Fourth Amendment's objective reasonableness standard applies to cases involving the use of force during arrest.  <u>Kuha v. City of Minnetonka</u>, 328 F.3d 427, 432 (8th Cir. 2003).  In determining the reasonableness of the use of force, the court considers the circumstances of the case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

---

[4]Ark. Code Ann. § 5-54-102(a)(1) provides as follows:  "A person commits the offense of obstructing governmental operations if the person . . . knowingly obstructs, impairs, or hinders the performance of any governmental function."

-10-

attempting to evade arrest by flight.  Dennen v. City of Duluth, 350 F.3d 786, 790-91 (8th Cir. 2003).

In this case, Hoffmann maintains Bell's use of handcuffs on March 12th, amounted to excessive force.  She maintains the cuffs left marks on her wrists.  The marks were, however, gone by March 14th.  In Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003), the court concluded no reasonable jury could have found excessive force in applying handcuffs because the plaintiff failed to present any medical records indicating a long-term or permanent physical injury.  See also Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1077-78, 1082(8th Cir. 1990)(without medical records indicating arrestee suffered long-term injury, allegations of pain and nerve damage as a result of being handcuffed too tightly for two hours were insufficient to support excessive force claim).  "For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries."  Hanig v. Lee, 415 F.3d 822, 834 (8th Cir. 2005).  Clearly, the existence of marks on Hoffmann's wrist that lasted less than three days is insufficient.

### *Miranda Rights*

The constitution does not require the giving of *Miranda* warnings.  See e.g., Chavez v. Martinez, 538 U.S. 760 (2003).  If statements obtained during custodial interrogation are not used against the party, there is no constitutional violation.  Davis v. City of Charleston, 827 F.2d 317, 322 (8th Cir. 1987).  "Moreover, violations of Miranda rights do not subject police officers to liability under § 1983."  Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1165 (10th Cir. 2003); see also Renda v. King, 347 F.3d 550, 552 (3rd Cir. 2003)(Plaintiff may not base a § 1983 claim on the mere fact that she was subjected to custodial interrogation without having

been provided her <u>Miranda</u> warnings); <u>Cooper v. Dupnik</u>, 963 F.2d 1220, 1243-44 (9th Cir. 1992)(A technical <u>Miranda</u> violation will not support a cause of action under § 1983).

### **Sheriff Ferguson's and Captain Petray's Motion for Summary Judgment**

Defendants contend they are entitled to summary judgment in their favor because there was no personal involvement by either Defendant in Hoffmann's arrest or incarceration. Further, they maintain there is no evidence of the existence of an unconstitutional policy or custom.

#### *False Imprisonment*

As discussed above, I have found that probable cause existed for Bell to arrest Hoffmann. This finding precludes any false imprisonment claims. <u>Anderson v. Franklin County</u>, 192 F.3d 1125, 1132 (8th Cir. 1999).

#### *Conditions of Confinement*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. <u>See Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII; <u>see also Butler v. Fletcher</u>, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the

-12-

"wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  See Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004)(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" Revels, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Id.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.  Hoffmann was incarcerated for a very short period of time, from March 12th to March 14th.  She indicates she was on no medication.  (Doc. 36 pg. 114).  She missed only one meal on the day she was booked in.  (Doc. 36 pg. 135).  Although she did not like the sleeping arrangements, she had a mat and a bunk.  (Doc. 37 pgs. 16-17).  Hoffmann's general complaints about the lack of clocks, not having been instructed on the telephone systems, not having visitors during the three days, only being provided cold food, and the alleged overcrowding, do not suggest the existence of any genuine issues of material fact as to whether Hoffmann was deprived of "a single, identifiable human need, such as food, warmth

-13-

or exercise." Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir.1994).  No deliberate indifference has been shown on the part of the Defendants.

While she indicates profanity and threats were used by Vanatta, Bendon and Sheriff Ferguson, verbal threats and verbal abuse do not violate the Constitution.  Clearly, "[v]erbal threats do not constitute a constitutional violation." Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, name calling, and the use of offensive language do not state a claim of constitutional dimension.  McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); Martin, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension).

## Conclusion

For the reasons stated, I recommend that the motion for summary judgment (Doc. 22) filed by Separate Defendants Sheriff Keith Ferguson and Captain Hunter Petray be granted.  I further recommend that the motion for summary judgment (Doc. 27) filed by Separate Defendant Steve Bell be granted and this case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties**

-14-

are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 6th day of September 2010.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)